UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ANGELA HERRINGTON** | **CASE NO. 2:17-CV-00643** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ANYA ASHLEY ET AL.** | **MAGISTRATE JUDGE KAY** |

MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 24] filed under Federal Rule of Civil Procedure 56 by defendant Picerne-Fort Polk Funding, LLC. Plaintiffs oppose the motion. Doc. 31.

I.
BACKGROUND

This suit arises from a dog attack that occurred on the Fort Polk military base in Vernon Parish, Louisiana. Anya Ashley, who was then a staff sergeant in the United States Army, resided there with her husband Robert Ashley in base housing provided by Corvias Military Living, LLC ("Corvias"). Doc. 24, att. 3, p. 1. Corvias is a member of Picerne-Fort Polk Funding, LLC ("Picerne-Fort Polk"). *Id.*

When Mrs. Ashley signed her Resident Occupancy Agreement on September 23, 2015, she also executed a Pet Addendum. Doc. 24, att. 4, p. 3. In this document she was informed that certain dog breeds, including pit bulls, would not be permitted in base housing or neighborhoods because of their aggressive tendencies. Doc. 24, att. 3, p. 12. Mrs. Ashley also admitted that she was informed of these policies when she moved in.

Doc. 24, att. 4, pp. 3–4. The Ashleys, however, owned two pit bulls – Blu and Kevin – which resided with them on base. *Id.* On their housing application they identified both animals as household pets but listed their breeds as "lab mix." Doc. 24, att. 3, p. 3. Mrs. Ashley further admitted that she did not take either animal to the Fort Polk Veterinary Clinic to be registered and that she installed plastic slats through her fence to keep other people from seeing into the yard where the dogs were kept. *Id.* at 4–6. Both of these actions were violations of Corvias housing policies, which prohibit fences from being modified and require that pets be registered at the veterinary clinic within five days of arrival. *See* doc. 31, att. 1 (fencing policy); doc. 31, att. 3 (pet policy). They also amounted to a violation of Army garrison policies, which require that pets be registered and that dogs identified as "mixed breed" be DNA tested to ensure that they are not the dangerous breeds banned from the base. *See* doc. 31, atts. 4 & 5 (garrison policies).

Plaintiff Angela Herrington, along with her minor children C.T. and W.H., also resided in Corvias-operated housing, two units down from the Ashleys. Doc. 24, att. 3, p. 1; *see* doc. 1. On the morning of May 22, 2016, C.T. and W.H. were walking from their home to a nearby playground. They allege that one of the pit bulls, later identified as Blu, began barking at them from the Ashleys' fenced yard, then jumped the fence and attacked them. Doc. 1, pp. 3–4; doc. 24, att. 4, p. 6. W.H. allegedly sustained serious injuries to his arm, requiring 20 to 25 stitches, while both children suffered psychological anguish from the event. Doc. 1, pp. 4–5.

After learning of the attack, Mrs. Ashley arranged for Blu to be transported off base and kept at her sister's house. Doc. 24, att. 4, p. 7. When she was contacted by military

2

police and asked to bring the dog involved in the attack into the veterinary clinic, she intentionally brought a different animal – a lab mix, as she had described Blu – and told military police that the animal involved was a black Labrador. *Id.* at 7–8. When her deception was discovered, she was court-martialed. *See* doc. 24, att. 5. At a hearing conducted on July 5, 2016, she pleaded guilty to charges of making a false statement and disobeying a general order, and apologized profusely for her deceptions. *Id.*

Plaintiffs filed suit in this court on May 16, 2017, against the Ashleys and Picerne-Fort Polk (originally misnamed as Corvias). Doc. 1. They allege that the Ashleys and Picerne-Fort Polk are liable for the children's injuries under Louisiana tort law. *Id.* Proceedings were stayed for a time due to a suggestion of bankruptcy on the part of the Ashleys, but the stay was lifted on February 5, 2019.[1] *See* doc. 12. Default was entered as to the Ashleys on August 29, 2019. Doc. 16.

Picerne-Fort Polk now moves for summary judgment on the issue of its liability. Doc. 24. Plaintiffs oppose the motion and maintain that Picerne-Fort Polk may be held liable for the children's injuries due to its alleged failure to enforce policies and discover the dogs' existence before the attack. Doc. 31.

---

[1] Plaintiffs have informed the court that the Ashleys' bankruptcy petition was dismissed at their own motion and that the filing had no impact on their potential liability in this matter. Doc. 22; *see* doc. 22, att. 1 (bankruptcy court order).

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
## LAW & APPLICATION

Plaintiffs allege that Picerne-Fort Polk is liable because it breached a duty of care to them, as base housing residents, and because it is vicariously liable for the negligence of the Ashleys. Doc. 1. It also asserts that the doctrine of *res ipsa loquitur* should be applied to find Picerne-Fort Polk liable. Doc. 31. Picerne-Fort Polk asserts that there is no relationship triggering vicarious liability and that no breach of duty or causation can be shown when the injury resulted from the Ashleys' violations of multiple base policies and concealment of an aggressive dog.

Louisiana's negligence statute is Civil Code article 2315, which provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Tort claims are evaluated through a duty-risk analysis that "takes into account the conduct of each individual party and the circumstances of each particular case." *Bross v. Chevron U.S.A., Inc.*, 649 F.Supp.2d 517, 521 (W.D. La. 2009). To prevail, the plaintiff must show the following: (1) that the defendant had a duty to conform his conduct to a specific standard of care; (2) that the defendant's conduct fell below that standard (breach); (3) that the breach was the cause-in-fact of plaintiff's injuries; (4) that the breach was the legal cause of plaintiff's injuries; and (5) damages. *S.J. v. Lafayette Par. Sch. Bd.*, 41 So.3d 1119, 1125 (La. 2010).

Under Louisiana jurisprudence, a landlord is only liable for injuries caused by his tenant's pet if he had actual knowledge of the animal's vicious tendencies.[2] *See Odom v. Fair*, 147 So.3d 1215, 1218 (La. Ct. App. 2d Cir. 2014) (collecting cases). Plaintiffs have alleged that Picerne-Fort Polk breached a duty to safeguard residents against unreasonable dangers by failing to follow through in the case of the Ashleys and ensure its policies were obeyed. Doc. 1, p. 7; *see* doc. 31. They also assert that a prior complaint was filed against the pit bull, Blu, after it attacked another resident's pet. Doc. 1, att. 7. Plaintiffs have produced no evidence of this, however. Picerne-Fort Polk maintains that it never received any complaints relating to either of the Ashleys' dogs. Doc. 24, att. 2, p. 6; *see* doc. 24, att. 7, p. 2. It has also submitted ample evidence, as described above, on (1) the mandates against pit bulls in base housing, (2) the Ashleys' intentional disregard of same, and (3) the Ashleys' efforts to conceal their violations both before and after the attack on May 22, 2016, in violation of multiple Corvias and garrison policies. Picerne-Fort Polk's general knowledge of the vicious propensities of pit bulls may be inferred from these policies. But there is no evidence to support its actual knowledge of the breed or propensities of the animals being kept by the Ashleys. Therefore Picerne-Fort Polk cannot be held liable for the attack under a theory of general negligence.

---

[2] As plaintiffs note, this court is not bound by the decision of a Louisiana circuit court of appeal. However, they present no other Louisiana jurisprudence on this subject. Instead, this proposition has been accepted by all of the Louisiana circuit courts. *See Odom*, supra; *Murillo v. Hernandez*, 772 So.2d 868 (La. Ct. App. 5th Cir. 2000); *Windham v. Murray*, 960 So.2d 328 (La. Ct. App. 4th Cir. 2007); *Smith v. Kopynec*, 119 So.3d 835 (La. Ct. App. 1st Cir. 2013); *Coburn v. Dixon*, 190 So.3d 816 (2016). Accordingly, the court accepts the decisions as persuasive and views the holding as an accurate reflection of the Louisiana laws under which plaintiffs bring their claims.

As for plaintiffs' assertion of vicarious liability, they bring this claim under Louisiana Civil Code article 2320. That statute relates to vicarious liability for different employment/training relationships. As Picerne-Fort Polk notes, there is nothing in the statute that suggests a landlord may be held vicariously liable for the actions of his tenants. Plaintiffs also raised the doctrine of *res ipsa loquitur* in their response.[3] The facts established in this matter show no basis for finding Picerne-Fort Polk liable. *Res ipsa loquitur* applies under Louisiana law only "in certain carefully defined circumstances" where the facts suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the injury. *Winans v. Rockwell Internat'l Corp.*, 705 F.2d 1449, 1454 (internal quotations omitted). The presence of multiple defendants does not prevent application of the doctrine. *Id.* In this matter, however, the facts suggest wrongdoing by the Ashleys as the most likely cause and there is not even significant circumstantial evidence pointing to Picerne-Fort Polk's negligence. Accordingly, plaintiffs have failed to establish any basis for Picerne-Fort Polk's liability.

---

[3] As Picerne-Fort Polk points out, *res ipsa loquitur* was not asserted anywhere in the complaint. However, this does not bar the court's consideration of the doctrine. *See, e.g.*, *Naquin v. Elevating Boats, LLC*, 744 F.3d 927, 937 (5th Cir. 2014).

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 24] will be granted and all claims against Picerne-Fort Polk will be dismissed with prejudice. The case still survives as to the Ashleys and has now been pending in this court for over three years. Accordingly, the court will also set a time limit for plaintiffs to move for default judgment against the remaining defendants.

**THUS DONE AND SIGNED** in Chambers, on this 20th day of August, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**